ORIGINAL

PAMELA O'LEARY TOWER #6152
1330 Pacific Tower
1001 Bishop Street
Honolulu, HI 96813
Telephone: (808) 526-9500
Facsimile: (808) 533-4588
Email: pamelatower@earthlink.net

Attorney for Defendant VAITAUTOLU

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 03 2006

at ___ o'clock and ___ min ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LIUGALUA VAITAUTOLU,<br><br>Defendant. | ) CR. NO. 04-00475 JMS<br>)<br>) DEFENDANT'S SENTENCING<br>) STATEMENT AND OBJECTION<br>) TO STATUTORY<br>) ENHANCEMENT; CERTIFICATE<br>) OF SERVICE<br>)<br>)<br>) Time: 1:30 p.m.<br>) Date: January 17, 2006<br>) Judge: J. Michael Seabright |

DEFENDANT'S SENTENCING STATEMENT
AND OBJECTION TO STATUTORY ENHANCEMENT

TO:   ED KUBO, UNITED STATES ATTORNEY, MARK INCIONG,
ASSISTANT UNITED STATES ATTORNEY; AND TO ANNE
SHIMOKAWA, U.S. PROBATION OFFICER:

Defendant LIUGALUA VAITAUTOLU, by and through his attorney PAMELA O'LEARY TOWER hereby files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553, et seq. Also included is his objection to the filing of the statutory enhancement pursuant to 21 U.S.C. §851.

I.    Facts.

On December 3, 2004, Liugalua "Rico" Vaitautolu was arrested at the Honolulu International Airport while attempting to board a plane bound for American Samoa. Methamphetamine was found strapped to his groin area. Mr. Vaitautolu was cooperative and gave a full unprotected statement regarding the incident. Mr. Vaitautolu was detained pending resolution of this matter and charged in an initial indictment with possessing with intent to distribute 50 grams or more of methamphetamine. On January 26, 2005, Mr. Vaitautolu was charged in a superseding indictment with knowingly and intentionally possessing with intent to distribute 5 grams or more, to wit: approximately 42.3 grams, of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II

controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  PSR at

¶¶ 1-3.  On February 3, 2005, the government filed a special information pursuant

to 21 U.S.C. §851, based upon Mr. Vaitautolu's prior Hawaii felony drug

conviction for Promoting a Dangerous Drug in the Third Degree.  PSR at ¶ 4. [1]

On April 19, 2005, Mr. Vaiatautolu pled guilty to Count 1 of the superseding

indictment.  There is no plea agreement.  PSR at ¶ 5.  Mr. Vaitautolu is before this

court for sentencing.

II.     <u>The Sentence</u>.

        <u>Sentencing Post-Booker</u>

        On January 12, 2005, the Supreme Court ruled that its Sixth Amendment

holding in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) and <u>Apprendi v. New</u>

<u>Jersey</u>, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines.  <u>United</u>

<u>States v. Booker</u>, 125 S. Ct. 738, 756 (2005).   Based on this conclusion, the Court

found those provisions of the federal Sentencing Reform Act of 1984 that make

the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the

Guidelines's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth

---

[1] The state felony conviction involved 0.064 grams of methamphetamine found as residue on a glass pipe.  For this *de minimus* amount of residue, Mr. Vaitautolu, a chronic abuser of methamphetamine with an advisory guideline range of 78-97 months, faces a ten year mandatory minimum sentence.

Amendment holding. Booker, 125 S.Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757. Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a). Booker, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors: 1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1); 2) "the kinds of sentences available" (§ 3553(a)(3); 3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§3553(a)(6); and 4) "the need to provide restitution to any victims of the offense." (§3553(a)(7).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list a variety of factors as "not ordinarily relevant" to

5

sentencing. Thus a sentencing court must also consider the formerly prohibited factors of Mr. Vaitautolu's age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth in conjunction with the advisory guideline range *because they are what make up the "history and characteristics" of the defendant* set forth in Section 3553(a)(1). [2]

          As Judge Adelman noted:

> The guidelines are not binding, and courts *need not justify a sentence outside of them by citing factors that take the case outside the "heartland."* Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, *so long as that the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors.*
> Sentencing will be harder now than it was a few months ago. District courts cannot just add up figures and pick a number within a narrow range. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person before them *as an individual.* Booker *is not* an invitation to do business as usual.

United States v. Ranum, 353 F. Supp. 2d 984, 987 (E. D. Wis. 2005)

---

[2] See e.g. U.S.S.G. §5H1.1, §5H1.2, §5H1.3, §5H1.4, §5H1.5, §5H1.6, §5H1.10, §5H1.11 and §5H1.12.

Because the advisory guideline range is now simply one of a number of Section 3553(a) factors, each of which should be given equal weight, this court should determine the final sentence as inclusive of all of the Section 3553(a) factors, including those that are prohibited or discouraged.  This final sentence will necessarily be lower because the advisory guideline range does not include previously prohibited or discouraged factors.  In sum, in every case, a sentencing court must now consider all of the §3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since §3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

III.    Application of the Statutory Sentencing Factors to the Facts of this Case

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

7

1.   <u>The Nature and Circumstances of the Offense and the History and Characteristics of the Offender</u>

    i.   <u>Nature and Circumstances of Offense</u>

This is a drug offense involving 42.3 grams of methamphetamine.  There are no other defendants and no great conspiracy.  Just the foolish attempt by a chronic ice abuser to transport his drug of choice to American Samoa for his own use.  <u>See</u> Letter of Liugalua Vaitautolu attached hereto as Exhibit A.[3]        .

    ii.   <u>History and Characteristics of Liugalua Vaitautolu, Jr.</u>

Liugalua "Rico" Vaitautolu, Jr.  is 39 years old, married to Luisa  and the father of  three sons, Brandon, Tyler and Roland.  He is one of six children and the oldest son.  His father, Liugalua Vaitautolu, Sr. retired from the United States Air Force and is currently employed by the government of American Samoa.  His mother passed away in 2002.  Mr. Vaitautolu graduated from high school in American Samoa and, in 1984, he joined the United States Army.  He was discharged in 1987.   Two of his siblings, Kalepo Vaitautolu and Evelyn Langford, are career military.

---

[3] "For the sake of perspective, two "Tic Tacs" weigh one gram."  <u>United States v. Moreland</u>, 366 F. Supp 2d 416, 419-420 (S.D.W.V. 2005).  Calculated accordingly, approximately eighty four "Tic Tacs."   One box of "Tic Tacs" has 37 mints.

Prior to this incident, Mr. Vaitautolu was employed full-time from 2000 to 2004 as a driver for Davy Roofing, in Orange County, California. Between 1993 and 1998, he was also employed as a truck driver in Honolulu, Hawaii. From 1984 to 1987, he served his tour of duty at Fort Riley, Kansas. He completed some correspondence college courses while in the Army. After he was discharged from the Army, Mr. Vaitautolu resided with his father and mother in American Samoa.

In 1998, Mr. Vaitautolu was arrested on suspicion of armed robbery. He was later charged with promoting a dangerous drug in the third degree (for 0.064 grams of methamphetamine residue found in an ice pipe); promoting a detrimental drug in the third degree (0.721 grams of marijuana) and use/ place to keep (a loaded firearm). These items were found pursuant to a search of the vehicle and his person incident to his arrest for the suspected robbery charge. The gun was in a pouch between the driver and passenger seat of the car of which he was the driver and registered owner. On November 15, 2000, Mr. Vaitautolu pled guilty to the above-charges. [4] He was sentenced to five years probation. Mr. Vaitautolu relocated to California with his family and his probation was transferred to that state.

---

[4]    The armed robbery charge was dismissed pending investigation.

All seemed to be well until on or about July 2003, when Mr. Vaitautolu tested positive for methamphetamine and THC and failed to register as a narcotics offender in the State of California. In January, 2004, California requested termination of the courtesy probation supervision and instructed Mr. Vaitautolu to return to Hawaii. Mr. Vaitautolu failed to comply and on November 18, 2004, a probation revocation warrant was issued for his arrest. On December 2, 2004, he was arrested pursuant to that warrant at the Honolulu International Airport

Despite his undisputed difficulties with methamphetamine addiction, Mr. Vaitautolu managed to remained employed full-time. He coached Pop Warner football and performed various community services. He took care of his immediate family and any relatives who needed help. The letters from his father and siblings reflect their collective shock at his arrest for this federal drug crime and their description of his conduct as "totally out of character." Mr. Vaitautolu, like many addicts, had the ability to lead an apparently 'normal' existence when in reality his life was one of quiet desperation.

He was on his way back to America Samoa to take over the care of his father, who has prostate cancer, because his brother, Kalepo, who had been stationed with the U.S. Army in American Samoa, was being transferred. Mr. Vaitautolu had hoped to transfer his probation to that jurisdiction. He desperately

needed substance abuse treatment, was floundering and clearly had not considered the consequences of any of his actions. He is now facing a mandatory ten year sentence.

Mr. Vaitautolu comes from a close-knit family that holds him in high regard, with full knowledge of these charges. In her letter to the court, his sister, Carolina V. Siofele [5] writes:

> I would like to express my feelings concerning my brother and the situation he is in. I can say this has been a great shock to our whole family. He is not at all a threat to society. He's a very good father to his 5 children and a very dedicated husband. My brother had helped my family and I when we moved to Honolulu from American Samoa in need of a place to reside until my husband and I were able to provide on our own. However, this situation he put himself into, is totally out of character. At this point, he feels very remorse for what he had done, and especially being away for the first time frdm his wife and children.

> \* \* \*

> Furthermore, my mother, a loving and wonderful person, had passed away not too long before this incident happened. I truly believe this had put a great affect upon his decision-making. . . . Liugalua was in the process of moving to American Samoa to be there for my father being home alone in the islands since my mother had passed. It was a very devastating and difficult time for all of us. In addition, my father is very old now and he is dependent on Liugalua being the oldest son out of my 6 siblings.

---

[5] The letters have been submitted by the probation officer to the court under separate cover.

His thirteen year old niece, Carolina T. Siofele, writes:

>My uncle Liugalua is a great person, father and a loving husband with a very humorous personality. It would be sad to see him put away from his family for such a period of time, not that it isn't already. He coaches for his sons' football team and is depended on in the family. Earlierin the years of my life, when my family and I moved to Hawaii and needed help until we got on our feet, he gave us a roof over our head and food on the table. He taught his kids right from wrong and had done the same for all of the young ones in our family as well as myself. Now I know we make mistakes, but it happens to everyone.

Her sister, Tanya Marie Siofele writes:

>Thank you for taking this time to read this letter in regards to Liugalua Vaitautolu Jr. My name is Tanya Marie Siofele. I will be 16 years old on October 7,th 2005. I am Liugalua's niece and I've known my uncle all my life. I want you to know that it's truly an honor to have Liugalua as my uncle and to always be around. Growing up, my uncle Liugalua has always been there for us through the good and bad times. He was there to share the joy and happiness with us children, He was always full of laughs, jokes and supported my family throughout the years. He would never deprave the decisions we've made, but rather encourage us with good advice.

>In addition, Liugalua not only plays a great role being an uncle, but also as a father to his 5 children. His expectations for his children were always focused in achieving greatness in academics and good sportsmanship in athletic activities. Moreover, he has a loving, caring heart, and is indeed a good person. The mistake he made, truly affected not only himself, but also each and every individual that know and care for him. It has also caused a great deal of stress upon his children and wife who need him now.

>With all that has recently happened, changes have occurred amongst the whole family. I believe he deserves another chance. I do know he feels remorse because of the time spent away from his wife and children. If he was given another chance, I know in my heart he will make it right. It hurts to see my uncle away, especially from his children. It's sad for their sake because the family is very dependent on him. It's difficult having him put

away for so long, the thought of him missing out on the many opportunities to guide and prepare his children's future pains me. Furthermore, I am currently a Jr. in high school preparing to graduate next year. As close as I am to my uncle, it saddens me to know he will not be present at my graduation. However, I hope that he will be there for his children's.

His father, Vaitautolu T. Liugalua, Sr., writes

As the father of the [. . . ][defendant], I express my sincerest apologies on behalf of my son. I vow to you that I have raised him better than how he has recently acted. From childbirth to the time my son left our family to join the military, I raised him to be a God fearing and law abiding individual. He was an obedient child as well as a dependable son within my family and church organization. He's a very loving individual and I'm sure he has seen the error of his ways. Jr, as he is known is our family has always been well liked by many people of various ages. It didn't matter how old you were my son regarded everyone with respect. He has a calm and a steady personality and the news that he has been charged with possession of drugs was not easy for me to accept because I found it hard to believe that he has changed to such a person.

I believe him to be a man of strong moral character and his mistake could have been caused because of mixing with bad company or could have been tricked into doing so. I think another reason for this out of character behavior in my son is the passing of his beloved mother. He was always very close to her and she was also one of his very best friends. Since her passing, he has been very sad and confused. He not only lost a mother but a close confidant as well.

Your Honor, with my highest regard and respect for the law, it is my wish and prayers that you find it in your heart to be lenient with my son. He is not a bad individual nor is he a hardened criminal, he has made a mistake and he owns up to that mistake. He deeply regrets what he has done and he has assured his family and me that this is an eyeopener for him and he will never do anything to bring any more shame to our family. I beseech you as a father and a parent to please grant him mercy or if at all possible, return him home to his homeland.

His brother, Kalepo Vaitautolu, writes:

I am Kalepo Vaitautolu. I'm the younger brother of Liugalua Vaitautolu Jr. For the past 19 years, I have been serving my country in the United States Army. Last year, (December 2004), while being deployed to Iraq, I was notified about what had happened to my brother. To tell you the truth, I was appalled. The purpose of this is to provide a character reference for Liugalua Vaitautolu Jr. whom I have known all my life. Accordingly, having known him so well over the past 37 years, I believe puts me in a position to provide you with a pretty accurate assessment of his character.

As his only brother, Liugalua has been a big inspiration, not only in my life, but to the rest of his family. Liugalua Jr. is the second oldest out of 6 children, the oldest being 39, and the youngest at 17. Growing up, Liugalua Jr. has always been the backbone of this family. We grew up in the military environment. My father served in the Air force, and retired honorably after 23 years of service. Liugalua Jr. is very much like my father. He is well respected within the family as well as his peers. Liugalua Jr. enlisted in the military because of the example my father set for us. Shortly after, I decided to pursue the same career. I have always looked up to my brother, even when going our separate ways. Liugalua Jr. is a very determined, hard working, humble man. He is a good uncle, a good husband, a good father, and most of all, a good human being.

In addition, he has also dedicated his time to the community getting involved in extracurricular activities, such as the pop-warner club for kids. Liugalua Jr. is a good role model, not only to his 3 sons, but to his whole family. If not for my brother, I would not have taken the path that I'm on now. He's not only been a mentor, but an advisor to me. Liugalua Jr. has always put his family first. He's made many sacrifices just to keep our family together. My mother passed away 4 years ago, which left my father all alone. This affected our family greatly. Especially my brother. He was very close to my mother. He hasn't been the same since.

After my mother passed away, I was given the opportunity to be stationed in American Samoa as the station commander for the only recruiting station on Island. This also gave me the opportunity to care for my father. Two years

later, I had to leave due to my military obligations. Once again, Liugalua was willing to sacrifice his job to transfer to American Samoa just to care for my father. He is a loyal, honest, considerate, and supportive individual who has the ability to see and understand things from another person's perspective. He is hyper-sensitive and is always tuned into how another person might feel in a given situation. To tell you the truth, I really can't think of anything of consequence on the negative side of the personality ledger when it comes to Liugalua Jr. Since I've known my brother, he has never been in any major trouble with the law. I'm not condoning what he has gotten himself into, but I do know what he did was out of character. I can go on and on praising my brother, but that doesn't change what has happened. Liugalua Jr. values his family. He always has, and always will value his family. All in all, I would have to say that Liugalua Jr. is a fine, well balanced person with an abundance of positive qualities.

His sister, Evelyn Vaitautolu-Langford, Lieutenant Colonel, United States Army writes:

I am the oldest of six children and Liugalua, better referred to as Junior, is a year younger than me. Throughout our childhood and into our adult years, my parents instilled in us a strong foundation of respect and service to our family, church, community and country. My father retired from twenty years of military service and has been serving in the Government of American Samoa for almost thirty years. My mother also retired from civil service shortly before her death in May 2001. My parents held us to high standards of having utmost respect for spiritual and civil obedience and basically with doing the right thing.

As a result of our parents' influence in our lives, my brothers Kalepo and Junior and I joined the military. Kalepo is serving his twentieth year in the Army in Fort Stewart, Georgia and I am presently stationed at Fort Sam Houston, Texas in my twenty-fourth year of military service.

I know Junior's heart and find it difficult to grasp the reality of the charges he's faced with. In my years of dealing with soldiers who have encountered similar circumstances, their personalities and upbringing could not compare to Junior's character and the potential he has to fulfilling his God given

purpose. His actions surrounding his present case are inexcusable and if given the opportunity to erase this from his life, I am certain he would never cross this path again.

If there was any other additional event that Junior could've erased from his life, it would also be the passing of our mother. He had the most difficulty dealing with her death. Even though we have continued on in our lives, I am not certain that Junior has gotten over her absence from our family and am uncertain as to whether this had affected his judgment and decisions in his recent change of behavior.

I had the opportunity to visit with Junior earlier this month and personally witnessed the transformation that has occurred in his life. It is evident that he is repentant and regretful not only for the pain this has caused his family, but above all, because of his decisions that were completely against what we were raised, taught and expected to do. I firmly believe that Junior is a person of high ethics at heart, but unfortunately exercised poor judgment in doing things that were wrong.

I believe there are times when we are at our lowest point in life that it also serves as an opportunity to look up and realize it's not where we belong. I respectfully ask for mercy and leniency on Junior's behalf and pray that your consideration of his sentence would also include regards to the person that he is at heart.

Finally, his wife, Luisa, writes:

My name is Luisa Silafau and I am married to Liugalua Vaitautolu (a.k.a. Liu). Liu and I have three beautiful sons - Brandon, age 12, Tyler, age 11, and Roland, age 6. I have known Liu for nearly 20 years and we have been together for over 13.

In all the years I have known Liu, he has always been a devoted brother and son. When we married and had children, Liu has always been a good provider, husband, and father to the boys. Family is always his first priority. Outside of work, Liu commits his time to his family. He was active in the boys' little league football association as assistant coach and was present at every game. He absolutely adores our children. In academics and athletics, Liu is their biggest critic and he is also their biggest fan.

Liu is not only devoted to his wife and children, but he is well-loved by all the elders and extended family members because of his dedication, honesty, and respectfulness. Liu is always conscientious of others and devoted to caring for his family. This momentary lapse of judgment on his part is something I have never seen before and I am sure I will never witness again. The lack of good judgment he exhibited by committing this crime is highly uncharacteristic of the type of person he truly is.

We, including Liu, are nearly collapsing from the burden of the sentencing he must now face. His actions are resulting in a crisis for himself and for his family. My children and I visit Liu faithfully, every single opportunity we are able. If we did not believe that Liu was a good person, I would not have left my job and uprooted my children from our home in Los Angeles. We left everything to live in Hawaii during this period of waiting and we did it in return for the love and devotion of a good husband and father.

These letters attest to the fact that Mr. Vaitautolu is kind, generous and

hard-working. He is a devoted son, husband, father and uncle.

In United States v. Moreland, supra, the district court explained its sentence

as follows:

> Clearly, Brian Moreland has not engaged in a "career" of crime and has not subsisted on a criminal livelihood. He is a 31 year-old man who has made both good and bad decisions in his life. He has not, however, demonstrated the pattern of recidivism or violence that would justify disposal to prison for a period of 30 years to life. One of the goals of sentencing remains the rehabilitation of convicts. I find that Mr. Moreland has an excellent chance of turning his life around after he completes his substantial sentence. As the Carvajal court noted, the goal of rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment.... A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than necessary to satisfy the goals of punishment.

366 F. Supp 2d at 422.

Mr. Vaitautolu is a 39 year old man who, like Mr. Moreland, "made both good and bad decisions in his life." Mr. Vaitautolu's prior criminal history is sporadic and indicative of the actions of a substance abuser, not a habitual criminal. There is no "pattern of recidivism or violence" that would justify a ten year sentence. He has accepted responsibility for his crime. He is genuinely remorseful and cognizant of the effects of his actions. He has earned his living by working, not through crime. He has the unconditional support of a cohesive family unit. Mr. Vaitautolu's age is also a factor to be considered. Studies have shown that defendants over the age of forty are less likely to reoffend. "Recidivism rates decline consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates." See U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines ;[6] United States v. Lucania, 379 F. Supp. 2d 288, 297 (E.D.N.Y. 2005)(recidivism is markedly lower for older defendants."; United States v. Nellum, 2005 WL 300073 (N.D. Ind., 2005)(quoting the U.S.S.C recidivism study). Recidivism is also markedly lower for those defendants who were employed in the year prior to the offense and who are married. See Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines at page 12.

---

[6] Available at: http://www.ussc.gov/publicat/Recidivism-General.pdf.

*Methamphetamine Dependence*

Mr. Vaitautolu is an admitted substance abuser whose destructive use of methamphetamine has brought him to this point in his life. Mr. Vaitautolu is immensely relieved that he was arrested because it is the key to his emancipation from dependency on drugs. While detained pending resolution of these charges, Mr. Vaitautolu has attended and completed several education courses and has regularly attended the Narcotics Anonymous meetings held at FDC Honolulu.

iii.    *The Kinds of Sentences Available*

The maximum term of imprisonment for Count 1 is life. There is a mandatory minimum sentence of ten years.   21 U.S.C. §§841(b)(1)(B) and 851.

iv.    *The Advisory Guideline Range*

The advisory guideline range for the instant matter is 78-97 months. PSR at ¶ 60. However, the statutory mandatory minimum sentence of 120 months shall be the guideline sentence.

v.    *The Need to Protect the Public*

This Court must also consider the need to protect the public, including the need to promote respect for the law and to deter further criminal activity. This is a serious drug crime and is therefore a factor that arguably supports a substantial prison sentence. However, this drug crime involves what is, for a chronic methamphetamine user, a personal use amount of methamphetamine of a low

purity that was intended to hold Mr. Vaitautolu over after he reached American Samoa. A ten year sentence is far greater than necessary to protect the public.

vi. *The Need to Avoid Unwarranted Sentencing Disparity*

The disparity in sentencing in this case does not involve co-defendants who received lesser sentences or charging policies between different jurisdictions. The disparity here is between punishment for actual offense conduct and punishment as a result of a statutory enhancement for conduct unrelated to the instant case. The filing of the Section 851 Information here doubled the mandatory minimum sentence from five years to ten years for possession of drugs of a low purity by a drug addict for personal use. The 'real' offense conduct here results in an advisory guideline range of 78-97 months based on the amount of drugs recovered and criminal history. The statutory punishment is ten years based on an unrelated prior drug felony involving 0.064 grams of methamphetamine residue. Aside from the obvious injustice of a ten year sentence under these circumstances, the Section 851 Information operates to deny Mr. Vaitautolu the benefit of a three-level departure for his clear acceptance of responsibility. Courts need to distinguish between drug dealers and drug addicts.

In <u>United States v. Moreland</u>, the district court, in the context of the application of the career offender provision, noted:

> The career offender provision provides no mechanism for evaluating the relative seriousness of the underlying prior conviction. Instead of reducing unwarranted sentencing disparities, such a mechanical approach ends up creating additional disparities because this guideline instructs courts to substitute an artificial offense level and criminal history in place of each individual defendant's precise characteristics. This substitution ignores the severity and character of the predicate offenses and equates relatively minor distribution convictions with violent and egregious drug trafficking crimes for sentencing purposes."

366 F. Supp. 2d at 424.    The district court's observation is well taken. A ten year sentence under the circumstances of this case serves no remedial or rehabilitative purpose. Indeed, it destroys hope.

    vii.   *The Need to Provide Restitution to Any Victims of the Offense*

Restitution is not an issue in this case.

The Statutory Enhancement

Mr. Vaitautolu objects to the statutory enhancement filed in this case pursuant to 21 U.S.C. §851. The predicate felony drug conviction  involved the possession of 0.064 grams of methamphetamine found as residue in a glass pipe in 1998, six years prior to the commission of the instant offense.  For this *de minimus* amount of residue, Mr. Vaitautolu, a chronic abuser of methamphetamine with an advisory guideline range of 78-97 months now faces a ten year mandatory

minimum sentence.  Congress could not possibly have intended that a "felony"

conviction for a barely detectable amount of methamphetamine residue found

inside an ice pipe would wreak this cruel result.  Rather, Congress clearly intended

to punish  recidivist drug <u>dealers</u>.  As applied in this case, the statutory

enhancement amounts to cruel and unusual punishment in violation of the Eighth

Amendment.

Further, the application of the recidivist enhancement under 21 U.S.C. §

841(b) based on the alleged fact of a prior conviction also is unconstitutional on

its face and as applied in this case because it violates Mr. Vaitautolu's rights under

the Fifth and Sixth Amendments of the Constitution. The application of this

statutory enhancement depends on the continued vitality of <u>Almendarez-Torres</u>,

523 U.S. 224 (1998), but as Justice Thomas has observed, a majority of the Court

now recognizes that <u>Almendarez-Torres</u> was wrongly decided.  See <u>Shepard v.</u>

<u>United States</u>, 125 S. Ct. 1254, 1264 (Thomas, J., concurring). As Justice Thomas

explained, the Sixth Amendment ruling of <u>Apprendi v. New Jersey</u>, 530 U.S. 466

(2000), barring increases in the sentencing range based on judge-found facts not

proven to the jury beyond a reasonable doubt or admitted by the defendant, should

apply equally to facts of prior conviction. <u>Shepard</u>, 125 S. Ct. at 1263 (Thomas, J.,

concurring); <u>Apprendi</u>, 530 U.S. at 520-21 (Thomas, J., concurring).  In this case,

Mr. Vaitautolu has never admitted the alleged prior felony drug conviction and the

conviction has not been proven to a jury. Application of the recidivist

enhancement, therefore, would be unconstitutional.

IV.    Conclusion

Mr. Vaitautolu is not a recidivist career drug dealer who needs a significant

term of incarceration. He is a drug addict who needs treatment. He has strong

family ties, is clearly employable and is truely remorseful. A sentence of sixty

months would provide just punishment , promote respect for the laws, deter and

rehabilitate.


DATED:  Honolulu, Hawaii, January 3 , 2006



PAMELA O'LEARY TOWER
Attorney for Defendant Vaitautolu

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of *Defendant's Sentencing Memorandum and Objection to Statutory Enhancement* was duly served on the following parties by U.S. Mail, Facsimile or hand-delivery on January 3 , 2006.

|  | **U.S. Mail** | **Fax** | **Hand-Delivery** |
|---|---|---|---|
| MARK INCIONG<br>Assistant United States Attorney<br>PJKK Federal Building, Room 6100<br>300 Ala Moana Boulevard<br>Honolulu, Hawaii 96813<br>Attorney for the United States |  |  | X |
| ANNE SHIMOKAWA<br>U.S. Probation Officer<br>PJKK Federal Building, Room C-110<br>300 Ala Moana Blvd.<br>Honolulu, Hawaii 96850 |  |  | X |

DATED:    Honolulu, Hawaii, January 3 , 2006.

PAMELA O'LEARY TOWER
Attorney for Defendant VAITAUTOLU